and then have a brief recess. Begin today with United States v. Huerra. Ms. Merchant. Good morning. May it please the Court, my name is Christy Merchant and I represent the appellant Mr. Jesse Huerra in this case. There are three issues that the appellant has raised in this case and our first and most important issue before the Court is that the District Court erred by denying the appellant's motion to suppress in the face of a bare bones affidavit. What is a bare bones affidavit? A bare bones affidavit is an affidavit that is so lacking in indicia of probable cause. It lacks facts and circumstances from which the magistrate can independently determine probable cause. Here, when we review the search warrant that Detective Heathcock submitted to the magistrate in this case, we can see that it is chock full of hearsay, unsubstantiated and uncorroborated from confidential informants and other members of law enforcement in which he was not engaged in an investigation with until several months later. Are you complaining that there was hearsay in the affidavit? We are complaining that there is unsubstantiated and uncorroborated hearsay. You acknowledge that hearsay is acceptable generally speaking? Yes, Your Honor. But the problem with hearsay is that we have to have a substantial basis in order to credit hearsay in a search warrant application. What we don't have in this case is the substantial basis for which we can credit that hearsay information. For example, in the first paragraph, even though there is information that says that we have methamphetamine distribution, the confidential informant that gave this information to Detective Heathcock didn't have any other basis. It wasn't specific. It wasn't particular about anything in regards to his information pertaining to Mr. Herrera. Furthermore, that information was stale and it was more than a year old whenever Detective Heathcock included that in his search warrant application. Furthermore, when we go further into the search warrant affidavit, there is no basis of knowledge when Detective Heathcock explains the information that he received from another offense report involving a separate confidential informant which made similar unparticularized allegations against Mr. Herrera. Because of this, there is no basis of knowledge for these individuals that Mr. Heathcock depended upon during his execution of his search warrant affidavit. What do you do with the good faith exception here? The good faith exception in this case does not apply. The reason why the good faith exception does not apply is because this is a bare bones affidavit. In order for the good faith exception to apply, there has got to be some reason for an officer that is executing the search warrant to have a good basis for believing that there is probable cause. In this case, Detective Heathcock is the individual who not only wrote the application for the search warrant, he is the one that signed the search warrant affidavit, he is also the one who executed it. When he executed this search warrant, he knew when he wrote this search warrant that he never saw Jesse Herrera conduct a controlled buy, he never saw Jesse Herrera with any drugs, he never saw Jesse Herrera with any kind of money, and he never saw Jesse Herrera engage in any kind of drug transaction. Everything that Detective Heathcock states in his affidavit is based on hearsay information that he has not a single instance of personal corroboration. He has no personal knowledge of any fact in this affidavit to corroborate any item in this search warrant affidavit. Well it is said that a confidential informant had told him that Herrera was involved in meth and distribution in sales and that the informant had seen Herrera with meth and that this CI had given reliable information in the past. Isn't that all substantial information that bolsters the affidavit? I wouldn't say it is substantial information that bolsters the affidavit. I think that gives you some instance of some facts that may create information to help him build towards a probable cause determination, but it does not satisfy the substantial basis to credit the overall. What about all the police reports? The San Angelo Police Department, the Texas Department of Public Safety, they had identified him as a source of drugs, they had surveilled him in the preceding three months distributing drugs and collecting drug proceeds. That's fairly specific. The problem with these specific reports, Your Honor, is that Detective Heathcock was not involved in any of these investigations. He didn't have to be. An officer can accept that from reliable sources. He does not have to have personal knowledge. They don't have to have personal knowledge, but they do have to have participation involved in the investigation at hand. In the offense reports that are listed regarding the reports from San Angelo and the Department of Public Safety, Officer Heathcock was not involved in any of those investigations. That's clear even on the search warrant affidavit. It says that he didn't begin his investigation until September 2015. What we have here are a lot of reports that he's getting from somebody else where he has absolutely no personal knowledge or affiliation with. He's trying to bootstrap those reports into something that he's added later on into this search warrant affidavit. Because of that, these portions of the affidavit where he asserts these facts are not corroborated by his personal information. We need that corroboration so we know that this information is reliable. Otherwise, what keeps us from having someone else create a report for another search warrant affidavit? We don't have any other way to keep these items from happening, and that's why we need this personal corroboration. Detective Heathcock had nothing that he personally observed throughout this entire search warrant affidavit. Examples where courts have found that the search warrant affidavits were insufficient because the police officers didn't have personal information is an unpublished case, but it was in United States v. Brown. It came from this court. All the information in that search warrant affidavit included was incidents about an arrest that happened earlier that week. It was the day before. They gave all kinds of information about that incident, but they didn't give his information regarding what happened. They said that he was under investigation, but they didn't explain in the investigation about what was observed during that investigation, and that's what we have here. We don't have any explanations of what was actually observed, seen or heard in this investigation. One thing that happened in this case is we have assertions in the affidavit that says that in September 15 and December 2015, there was surveillance conducted over Mr. Herrera, but during the suppression hearing, it came out that Detective Heathcock never actually heard anything, saw anything. Everything was just a presumption, and everything that he's talking about is based on some information that he received from another person. These are unsubstantiated hearsay statements that he cannot corroborate based on his own personal observations, and that's the big problem with this search warrant affidavit. I know that there's a lot of precedent where search warrant affidavits that may have more or less words in the affidavit that we have are not called bare-bones affidavits. We've got Satterwhite, we've got Pope, and we've got McIver, who each of these cases the courts have declined to have a finding of a bare-bones affidavit, but there's distinctions for each one of those reasons why those affidavits weren't bare-bones affidavits. In Satterwhite, for example, the defendant had personal knowledge of facts that were alleged in the affidavit. Detective Heathcock didn't have that personal information. But what about cases addressing the good faith exception? Well, the good faith exception, when we're talking about application of the good faith exception, we still have to consider the application of the bare-bones affidavit concept, because that you can't have one without the other. The cases seem to be fairly strongly against your position with respect. I agree, Your Honor, that we don't have a lot of precedent. And to be quite honest, it seems like the good faith exception completely swallows the role to the Fourth Amendment when it comes to searches and seizures. There is not a lot of case law, and I will concede that point. And the reason why we don't have a lot of case law is because the good faith exception pretty much gives almost everything, full leeway, if we can have one fact and then they say, the President says that we don't have a bare-bones affidavit. In Satterwhite, the defendant actually had personal knowledge. In Pope, that was a Fifth Amendment. The defendant was actually involved in a direct buy, even though his affidavit supporting a search warrant was based on some somewhat misleading facts, as well as it was I think 74 months old. And in Pope, when they found that that was not a bare-bones affidavit, it was because that police officer was actually involved in the illegal activity of the conducted drug buy, as well as had continued the investigation throughout his application for the search warrant affidavit. We don't have that here. And so these distinctions are what's different for Mr. Herrera's case, because we have someone who's never been involved until very long after all this other information has been obtained by these unknown sources whose reliability cannot be confirmed. And some other factors in these cases involving holdings where the courts have declined to find bare-bones affidavits, there have been individuals who've made statements against their penal interests, and they've admitted to engaging in criminal activity, and they've used that information to use as a basis for crediting that hearsay. We don't have a basis like that to credit the hearsay here in Mr. Herrera's case. We solely have uncorroborated testimony and hearsay to support the affidavit that is in this case. And finally, the testimony during this motion to suppress hearing shows that Detective Heathcock didn't see anything. He didn't hear anything. Later on, the government asked the trial court to take judicial notice of wiretap intercepts against counsel's objections, but the trial court filed in support of those wiretap applications. Mr. Herrera's name is never listed at any point in time in those applications, and our record's been supplemented to include those applications for your review. And so we have all of this information, but we don't have any actual facts to support the personal knowledge requirement, the corroboration requirement, for issuing the search warrant affidavit in this case. And with all respect to the Court, I've got 15 seconds left that I'll give back. That's fine, and you've saved time for rebuttal, Ms. Murchin. Thank you. Mr. Stoltz? Thank you, Your Honor. May it please the Court. The Court can dispose of the first issue relating to the search warrant on the basis of the first prong of the good faith exception. The case law is clear that an affidavit is not bare bones unless it has wholly conclusory statements in the nature of something like, you know, I have reason to believe that there are drugs. This affidavit is in the record. It's pretty clearly not a bare bones affidavit. I'll just mention a few things. On the issue of what did the actual detective who swore out the affidavit do, the affidavit states on page 107 of the record that surveillance had been conducted by the affiant, in other words by the detective himself. He was conducting surveillance along with others. At the hearing, there were some questions from defense counsel about whether the detective had actually physically seen drugs themselves during the course of the surveillance. And he said no, but he said we have seen what we believe to be narcotics transactions. In other words, you wouldn't expect that the drugs would be actually, you know, physically seen on the street, but they'd seen other things that fit the profile of narcotics transactions. You know, you can The rest of the affidavit, you know, there's two confidential informants. Both informants, there was a basis for crediting their statements. One informant had personally seen Mr. Huera in possession of the methamphetamine and identified him as a dealer. The second informant had made a similar statement. Both informants, the affidavit explained that both informants had provided information that had proved to be reliable. So considering the totality of circumstances here, it certainly was not error for the district court to conclude that the good faith exception applied. It also, you know, would not error for the district court to conclude that even if the good faith exception didn't apply, there was at least a substantial basis in this affidavit for the state district judge who issued the warrant to conclude that probable cause existed. So we ask that the court affirm the denial of the motion to suppress. I'll briefly mention the Voy Dyer issue. You know, this is a case where one of the charges was a felon in possession count. So the jury was told and was going to be told that, you know, the defendant, Mr. Huera, had a prior conviction, you know, with a range of imprisonment of greater than a year. Now this statement that was made during Voy Dyer by the parole officer was simply that Mr. Huera was under his supervision. He knew Mr. Huera. He was under his supervision. There was no further details provided about what offense had been committed, why he, you know, what specific crime had been committed. It was simply an explanation that he was under my supervision. I know him. And on the basis of that, the district judge immediately excused the parole officer. Now in the reply brief, Mr. Huera argues that this statement and the Voy Dyer somehow deprived Mr. Huera of having the government prove the existence of this prior felony. And the record just doesn't support that. On page 426 of the record, there's a stipulation that Mr. Huera had executed prior to the start of the trial, prior to Voy Dyer, where he had already stipulated to the existence of this felony. So the felony was already stipulated to. There was no issue about whether the government was going to have to prove the existence of this felony or not. And in fact, if the stipulation had gone away or had not existed, Mr. Huera likely would have been in a much worse situation because the government then could have put on the details of his prior felony convictions, which included two prior convictions under state law for, you know, drug offenses. So I don't think it can be claimed that Mr. Huera was in any way prejudiced by the fact that, you know, he had stipulated to this offense. And so the court can resolve the Voy Dyer issue, I think easily, just on the basis that this is a felony possession case. The jury already was going to find out about this anyway. And the record just doesn't support that there was any prejudice. The district court immediately excused the juror who knew Mr. Huera. Later, when some of the other jurors said that they might have been affected by this statement, the district court engaged in a short colloquy with them where the district court reiterated the presumption of innocence and asked if these members still would not be able to be fair and impartial. They said they would not be and he said okay. At that point, even though it's claimed that this had some sort of coercive effect on the panel or somehow caused the panel to shut down, the record doesn't support that either. Because immediately after the district court made those remarks, a third panel member spoke up and said I also believe that I could not be fair. So it's clear that the district court didn't dissuade anybody from voicing their opinions. And I'd like to clarify, we make some reference in the brief to sort of what happened during this Voy Dyer. And the record shows that it was a very lively panel and they were consistently voicing their opinions throughout the process. After the parole officer first identified that he knew the defendant, there's several pages of transcripts where other panel members are talking about how they don't necessarily agree with federal gun laws or they don't necessarily agree with federal law enforcement activities. It was not a shy panel at all. After the district court then had his colloquy with the panel members who said they might have been influenced by the parole officer's statement, some additional panel members then, one of them said I also would be influenced by this. But then other panel members talked about how due to people that they knew or family members that had used drugs, that they felt that they couldn't be fair because of that. So there was, throughout the whole process, the panel was more than willing to sort of share its ideas and volunteer information, including information that basically was that they couldn't be fair. So there's just, the record doesn't support that this panel was in any way shut down by the district court. And again though, it was a felon in possession case. There's absolutely no basis for concluding that prejudice can be shown. Finally on the sentencing issue, I think there was no objection to this career offender status. There was a sort of blanket objection that said he doesn't have the right number of convictions. But it didn't even differentiate between controlled substance convictions and crimes of violence. And he had one crime of violence conviction. In contrast, in the Hinkle case, there was a more specific objection about whether the Texas statute does not meet the test because it criminalizes an offer to sell. There was no similar objection here. So we believe that plain error is the proper standard of review and there's no effect on the substantial rights. You have conceded prongs one and two, I believe, have you not? That's correct, Your Honor. Under Hinkley and subsequent opinions, it's absolutely true that those Texas state court drug convictions do not qualify as controlled substance offenses. But as noted in the brief, because the defendant is subject to a life term on a separate count, there's no effect on his substantial rights. The error, as I understand it, affects only the shorter of the two concurrent sentences. That's correct, Your Honor. The error only affects the sentence on count 13. And on count 12, he's subject to the life sentence regardless. So we don't think there's any effect on substantial rights. And certainly, even if the court were to find that plain error does not apply, there's no need for a resentencing at this time, as we've detailed in the brief. I'm happy to take questions if there's any questions. Otherwise, we stand on our brief and we'd ask the court to affirm the judgment in all respects. All right. Thank you, Mr. Stoltz. Thank you. Mr. Merchant, you've saved time for rebuttal. Mr. Stoltz says that count 12 is the answer to your good efforts. Your Honor, can you please clarify your question? Mandatory life. Yes. It's only our answer to our questions if we lose on the first two issues, candidly, Your Honor. There's a couple of things that I would like to address that Mr. Stoltz did say in his argument in reference to Detective Heathcock's description of conducting surveillance and things that they would see would be typical in what is seen in surveilling this kind of situation. Well, the big question is what other things were seen. We don't know because it was not described in the affidavit. But he was involved in the investigation. At some point in September 2015, and we don't know what he saw, what he heard, who he saw, or anything of that nature because he didn't have any personal observations to corroborate any of the statements that he raised in his affidavit. There are also cases, as I recall, that say if a judge issues a warrant, that's almost good faith as a matter of law for the officer. If a judge thinks the affidavit is sufficient, why would the officer not have a good faith belief? The reason why Detective Heathcock did not have a good faith belief in this circumstance is because he knew that he was providing a search warrant affidavit where he had no personal observations to corroborate any item in the search warrant affidavit. When he knew that he presented that to the magistrate judge, he knew that he didn't have anything to corroborate. But the affidavit said that. He was candid about that in the affidavit, wasn't he? That he didn't know anything? He didn't say, I saw this, I knew this. He explained exactly where he got his information. He didn't purport to say, I have personal knowledge. No, but he should have known that he needs more than being able to rely on uncorroborated. He has a job to corroborate the information that he gets. What's your best case that says that? United States v. Barrington, 806 F. 2nd, 529, 5th Circuit, 1986. Judge Reveley actually wrote that opinion. That case said that it was a bare bones affidavit because even though there was no good faith exception applicable in that case, because the officer who wrote the affidavit is the same officer who executed the affidavit. In regards to the other issues that are raised in our brief, specifically to the second issue regarding the jury selection. There was error because there was an outburst that was not responsive to any questions that the trial court asked during Vortire. The trial court asked specifically, does anybody on the jury panel who knows Mr. Hogg, his co-counsel, or their case agent, Jamal Floyd, volunteered that he was Jesse Herrera's parole officer? That was not responsive to anything. There was never an admonishment by the trial judge or anyone that the jury needed to be instructed to disregard Mr. Floyd's outburst that Mr. Herrera was on parole at the time of the trial. So what is the importance of this? This is not some sort of harmless error. It doesn't matter because they were going to find out whether he was a criminal or not. The issue here is this affected the entire realm of the trial. The jury was left an impression. That impression was evident through the questions that were raised during Vortire by defense counsel. There was no way for that impression to be released or removed absent striking the entire panel and ordering a new one for a new trial. My time is up.